**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**KATINA TAGERT WHITE**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:25-cv-649-KHJ-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Katina Tagert White brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be reversed and this action be remanded for further consideration.

## PROCEDURAL HISTORY

On January 14, 2022, Plaintiff applied for disability insurance benefits, alleging that she had been disabled since October 20, 2018, due to nerve damage, pain, and depression. (Administrative Record [10] at 206-14, 279). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") conducted hearings on May 15, 2024, and October 2, 2024. ([10] at 41, 73). On December 5, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. ([10] at 19-34).

Plaintiff then appealed the ALJ's decision to the Appeals Council. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([10] at 6-10). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

1

**ADMINISTRATIVE LAW JUDGE'S DECISION**

In her December 5, 2024, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f) [1] and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between her alleged disability onset date (October 20, 2018) and her date last insured[2] (December 31, 2023). ([10] at 21). At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, cervical degenerative disc disease, and obesity. ([10] at 21). The ALJ found that Plaintiff's other medically determinable impairments—depression, migraine headaches, obstructive sleep apnea, hypertension, and hyperlipidemia—were not severe. ([10] at 22). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([10] at 23).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] A claimant is eligible for disability insurance benefits only if the onset of the qualifying impairment began on or before the date last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). Plaintiff's date last insured is December 31, 2023, and Plaintiff bears the burden of establishing that she suffered from a disabling impairment on or before that date. *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] with the following exceptions: "[S]he should not have been required to climb ladders, ropes, or scaffolds and should only occasionally have balanced, stooped, knelt, crouched, crawled, or climbed ramps or stairs." ([10] at 23).

At step four, the ALJ found that Plaintiff had no past relevant work. ([10] at 32). Thus, the ALJ proceeded to step five and found that, during the relevant time period (October 20, 2018, to December 31, 2023), jobs existed in significant numbers in the national economy which Plaintiff could have performed. ([10] at 33). Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date and the date last insured. ([10] at 34).

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is

---

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id.*

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). An error affects a party's substantial rights when it "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following ground: "The ALJ's RFC finding is not supported by substantial evidence, in particular in finding that [Plaintiff] can perform the significant standing/walking requirements of light jobs despite her severe impairments of diabetes with neuropathy and cervical degenerative disc disease." ([13] at 1).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly assess Plaintiff's self-described limitations and the medical opinions of record. Specifically, Plaintiff argues that "[t]he ALJ's repetitive references to a mixed set of

4

normal and abnormal findings and purportedly inconsistent daily activities do not support h[er] findings regarding the medical opinions and the consistency of Plaintiff's statements." ([13] at 13).  Additionally, she argues that "[t]he ALJ's conclusory, inapt, sometimes factually inaccurate rationales are not substantial evidence." ([13] at 11).

The ALJ found that Plaintiff could perform a limited range of light work.  Specifically, the ALJ found that, during the relevant time period, Plaintiff could perform light work with the following exceptions: Plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. ([10] at 23).  Plaintiff argues that substantial evidence does not support the finding that she could perform light work, particularly the standing/walking requirements of such work.

Plaintiff describes light work's standing/walking requirements as "arduous." ([13] at 2).  The regulations describe it as "a good deal of walking or standing." 20 C.F.R. § 404.1567(b).  Specifically, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.  "Sitting may occur intermittently during the remaining time." *Id*.

An RFC determination must be based on all the relevant evidence in the case record. *See* 20 C.F.R. § 416.945.  An ALJ has a duty to develop the record before her and must make an RFC assessment that is supported by substantial evidence.  As noted above, "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164.  The claimant bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler*, 501 F.3d at 448.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints, medical records, opinion evidence, and activities of daily living. The ALJ began her RFC analysis by evaluating Plaintiff's subjective complaints.

An ALJ is required to follow a two-step process in evaluating a claimant's subjective complaints. First, the ALJ considers whether there is a medically-determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

If the claimant meets the burden of showing an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ continues to the second step. There, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id*.

For this evaluation, the ALJ examines the entire record, including the objective medical evidence, the claimant's subjective complaints, statements from medical sources and others, and any other relevant evidence. *Id*. When evaluating alleged symptoms, the ALJ considers several specific factors, such as: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant has taken or takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on one's back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. *Id*.

The ALJ is not required to "name, enumerate, and discuss each factor in outline or other rigid mechanical form." *Prince v. Barnhart*, 418 F.Supp.2d 869, 871 (E.D. Tex. 2005). "It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Id*.

Here, the ALJ noted that on August 8, 2022, Plaintiff completed a pain questionnaire in which she reported constant pain in her right arm and left leg. ([10] at 24, 301-03). The ALJ noted that on January 30, 2022, Plaintiff completed a function report in which she described her daily activities and reported being able to lift no more than ten pounds, having problems standing and climbing stairs, and being able to walk no more than a mile before needing rest. ([10] at 24, 290). The ALJ also noted Plaintiff's hearing testimony concerning pain and numbness in her left leg and right arm, problems with her neck and lower back, her inability to walk for more than ten minutes, and her inability to stand or sit for more than five minutes. ([10] at 24).

Concerning these subjective complaints, the ALJ found as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not fully supported, particularly to the extent they are inconsistent with the determined residual functional capacity for the period through the date last insured." ([10] at 25).

In making this finding, the ALJ considered Plaintiff's medical records, noting that in 2018, before the alleged disability onset date, Plaintiff received a cervical injection which resulted in a spinal cord contusion causing numbness on her right side, difficulty walking, and headaches. ([10] at 25, 402-04). This resulted in Plaintiff staying in a rehabilitation facility for eight days. ([10] at 25, 406).

During a visit with Dr. Philip Blount at Methodist Physical Medicine in June of 2018, Plaintiff reported being independent with basic activities of daily living and mobility but having difficulty with long walks and climbing stairs. ([10] at 25, 407). Dr. Blount noted an abnormal gait with a significant limp from muscle weakness. ([10] at 25, 407). During a visit the next month, Dr. Blount noted that Plaintiff's pain was mild, and she was making "slow, good" progress in physical therapy. ([10] at 25, 409). Plaintiff informed Dr. Blount that she had not returned to work because she was apprehensive about climbing stairs and because light duty was not available. ([10] at 25, 409). In September of 2018, Plaintiff reported that she was gradually getting stronger and could tolerate more physical activities. ([10] at 25, 410). Dr. Blount noted that Plaintiff's gait was improving but that she still had obvious weakness in her right leg and mild to moderate pain in both legs, her left arm, and her trunk. ([10] at 25, 410).

On October 24, 2018, shortly after the alleged disability onset date, Plaintiff reported an increase in pain and being nervous about starting work. ([10] at 26, 412). Dr. Blount noted that Plaintiff's gait was improving and noted 5/5 motor strength in her arms and legs. ([10] at 26, 412).

On November 7, 2018, Plaintiff reported to Dr. Blount that she attempted a return to work, but it was the "worst night" of her life due to unbearable pain. ([10-5] at 95). Dr. Blount noted abrasions on Plaintiff from a fall two days prior and noted that her gait was "slightly antalgic." ([10-5] at 95). Dr. Blount stated that Plaintiff would benefit from a temporary disability status. ([10-5] at 95). Plaintiff also visited with a nurse practitioner on November 7, 2018. During that visit, Plaintiff reported hypersensitive nerve pain in her left leg, and the nurse practitioner noted pain and numbness in Plaintiff's right arm and pain from her left hip to left

foot. ([10] at 26, 441-43).  Unlike Dr. Blount, however, the nurse practitioner noted that Plaintiff's gait was normal. ([10] at 26, 443).

On February 13, 2019, Plaintiff reported to Dr. Blount that "she and her mother and sister have started a catering business focusing on cooking including cakes and other preparations." ([10] at 26; [10-5] at 94).  Dr. Blount noted that Plaintiff had moderate pain in her right arm and left leg but that her gait was "improved, smooth." ([10] at 26; [10-5] at 94).  Dr. Blount did not recommend any formal physical therapy, but encouraged Plaintiff to continue functioning with the catering business. ([10] at 26; [10-5] at 94).

Following a vehicle collision on March 21, 2019, Plaintiff was treated in an emergency room, where spinal imaging revealed spondylosis with no significant stenoses, mild ossific spurring and uncinate hypertrophy at C5-6 and C6-7, straightening of cervical curvature, and well-maintained vertebral heights but with disc space narrowing at C5-6. ([10] at 26; [10-5] at 176).

Plaintiff returned to Dr. Blount's office on August 19, 2019, and reported that she had done well with Lyrica, a medication used to treat nerve pain. ([10] at 26; [10-5] at 93).  Dr. Blount noted that Plaintiff was independent with activities of daily living. ([10] at 26; [10-5] at 93).  He stated that her gait was "smooth, nonantalgic, and non-spastic." ([10] at 26; [10-5] at 93).

On February 19, 2020, however, Plaintiff reported that her symptoms, including pain, had worsened over the prior few months and that she was experiencing spasms in her arms and legs. ([10] at 26; [10-5] at 91).  At that time, she had abnormal sensation in her right arm and left leg, but had normal, symmetric strength and tone in her arms and legs and had negative straight leg raise tests for both legs. ([10] at 26; [10-5] at 91).

On March 25, 2020, Plaintiff reported that she was better and that medication had helped her spasms. ([10] at 26; [10-5] at 89).  On July 22, 2020, Plaintiff reported that she had "done quite well" since the last visit in March and that she was trying to get a job at the state crime lab. ([10] at 27; [10-5] at 87).  It was again noted that she had normal, symmetric strength and tone in her arms and legs and had negative straight leg raise tests for both legs. ([10] at 27; [10-5] at 87).

Plaintiff did not return to Dr. Blount's clinic until January 19, 2022, when she reported doing "well over the past year and a half." ([10] at 27; [10-5] at 85).  Plaintiff, however, also reported worsening chronic pain. ([10] at 27; [10-5] at 85).  At that time, her physical exam findings were normal.  Her gait was non-antalgic, her sensation was intact, her strength and tone in all extremities were normal, and her straight leg raise tests were negative. ([10] at 27; [10-5] at 85).  The next month, she reported walking more which helped reduce pain. ([10] at 27; [10-5] at 84).

Plaintiff returned for a physical medicine visit on August 5, 2022, and stated that the chronic pain in her arm and leg had worsened. ([10] at 27; [10-5] at 82).  It was noted that her gait was non-antalgic and her strength and tone in all extremities were normal. ([10] at 27; [10-5] at 82).  On March 8, 2023, Plaintiff reported significant pain in her arm and leg, but her physical exam revealed a normal gait and normal strength in all extremities. ([10] at 27; [10-5] at 261).

On March 23, 2023, Plaintiff was seen by a pain management provider following a referral from Dr. Blount.  Plaintiff described her pain and stated that it increased with household chores and lifting. ([10-5] at 412).  At this visit, it was noted that Plaintiff had "an antalgic gait, without assistive device." ([10-5] at 413).  She had normal range of motion in her cervical spine but a restricted range of motion in her lumbar spine, along with pain exacerbation in all planes.

([10] at 27; [10-5] at 414).[5]  She was also tender to palpation over her lumbar spine, but she had normal range of motion and 5/5 motor function in her legs, along with negative straight leg raise tests. ([10-5] at 414).

On April 5, 2023, Plaintiff reported an 8/10 pain level in her neck, right arm, and left leg. ([10-5] at 407).  It was noted that Plaintiff had an antalgic gait; normal range of motion in her cervical spine; restricted range of motion, pain, and tenderness in her lumbar spine;[6] and 5/5 motor function in her legs, along with negative straight leg raise tests. ([10] at 28; [10-5] at 409).

On April 24, 2023, imaging of Plaintiff's cervical spine revealed C4-5 and C5-6 disc protrusions with focal spinal stenosis and cord compression; C3-4 disc protrusion compressing the nerve root; C6-7 disc bulge; and mild lower thoracic myelomalacia. ([10] at 28; [10-5] at 436).

On May 17, 2023, Plaintiff returned to her pain management provider and again reported an 8/10 pain level in her neck, right arm, and left leg. ([10-5] at 402).  It was noted that Plaintiff had an antalgic gait; normal range of motion in her cervical spine; restricted range of motion, pain, and tenderness in her lumbar spine;[7] and 5/5 motor function in her legs, along with negative straight leg raise tests. ([10] at 28; [10-5] at 404).

Imaging of her lumbar spine on June 23, 2023, revealed L5-S1 disc bulges with right annulus tear. ([10-5] at 346).  A nurse practitioner described that images as showing "an overall

---

[5] The ALJ incorrectly noted that Plaintiff had a normal range of motion in both her cervical and lumbar spine. ([10] at 27).

[6]  The ALJ incorrectly noted that Plaintiff had a normal range of motion in her lumbar spine. ([10] at 28).

[7]  The ALJ incorrectly noted that Plaintiff had a normal range of motion in her lumbar spine. ([10] at 28).

healthy appearing spine except for at the L5-S1 level, where there is very mild right-sided L5-S1 lateral recess stenosis." ([10] at 28; [10-5] at 341).

During a neurology visit on July 14, 2023, Plaintiff reported pain in her neck and severe pain in her right arm. ([10] at 28; [10-5] at 340).  The provider discussed Plaintiff's cervical disc bulges, spondylosis, and stenosis and also discussed treatment options, including surgery. ([10] at 28; [10-5] at 340).

On August 17, 2023, Plaintiff underwent an anterior cervical discectomy and fusion of the C5-6 to treat the "regional pain syndrome, right upper extremity, secondary to spinal cord injury" and cervical spondylosis at C5-6. ([10] at 28; [10-5] at 337-38).  During a follow-up visit on September 22, 2023, it was noted that Plaintiff "has done well, with only some slight flareup of radicular pain." ([10] at 28; [10-5] at 439).

Plaintiff, however, returned to a pain management provider on December 21, 2023, and reported unbearable, 10/10 pain in her neck, right arm, and left leg after "some relief in her pain from surgery." ([10] at 28; [10-5] at 392).  Like the prior visits with the pain management provider, it was noted that Plaintiff had an antalgic gait; normal range of motion in her cervical spine; restricted range of motion, pain, and tenderness in her lumbar spine; and normal range of motion and 5/5 motor function in her legs, along with negative straight leg raise tests. ([10-5] at 394).

During a primary care visit on February 28, 2024, after the date last insured, the provider noted joint pain but normal musculoskeletal and cervical spine range of motion. ([10] at 28; [10-5] at 489).  On March 14, 2024, Plaintiff reported to her pain management provider that her pain had improved due to pain medication, but remained at a 6/10 pain level. ([10] at 29; [10-5] at 378).  Her reported pain level remained at 6/10 on May 9, 2024, but on May 28, 2024, she

12

reported a 3/10 pain level and stated that she had been taking hydrocodone once a day, which had been helpful. ([10] at 29; [10-5] at 364, 370).

Having discussed these medical records, the ALJ summarized the medical findings and held as follows:

> While she had some abnormal physical exam findings during treatment, she generally had non-antalgic gait, negative straight leg raise, normal strength and tone, and normal cervical and lumbar range of motion (16F; 20F; 27F). She had a cervical fusion in August 2023 and was noted to be doing well (28F). She had normal range of motion of the cervical and lumbar spine and normal range of motion and five of five strength in the bilateral upper and lower extremities (27F; 30F). She reported improvement in her pain with medication in 2024 (27F; 29F). The claimant is capable of less than a full range of light work as described in the residual functional capacity. The above reports of the claimant and normal physical exam findings support that no further restrictions are warranted.

([10] at 29).

Plaintiff argues that the ALJ's analysis was "conclusory, inapt, and sometimes factually inaccurate" and not support by substantial evidence. ([13] at 11). This argument is not entirely without merit, but the ALJ's analysis of Plaintiff's subjective complaints was not conclusory or inapt. The ALJ followed the two-step process for evaluating subjective complaints set forth in the regulations[8] and conducted a thorough review of the record evidence, including Plaintiff's testimony, medical opinions, and medical records.

However, the ALJ's analysis of the medical records contains factual inaccuracies. Multiple times, the ALJ, while citing medical records, noted that Plaintiff had a normal range of motion in her lumbar spine. ([10] at 27-32). But, the cited medical records actually contain findings on nine different occasions[9] that Plaintiff had restricted range of motion in her lumbar

---

[8] 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

[9] Five of these findings were made in 2023 (March 23, April 5, May 17, July 19, and December 21) and four were made in 2024 (February 15, March 14, May 9, and May 28).

spine, along with pain exacerbation in all plains and tenderness to palpation. ([10-5] at 367, 372, 380, 388, 394, 399, 404, 409, 414).  In his Response [16], the Commissioner does not acknowledge these mistakes but, instead, repeats the mistake by stating Plaintiff "generally had . . . normal lumbar range of motion." ([13] at 8).

An ALJ's error does not end the Court's analysis.  "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler*, 501 F.3d at 448.  An error affects a party's substantial rights when it "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335.  On the other hand, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).  Plaintiff bears the burden of showing that the ALJ's mistake was prejudicial. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

An ALJ's "significant reliance" on a serious factual mistake "would render the finding of no disability unsupported by substantial evidence." *Randall v. Sullivan*. 956 F.2d 105, 109 (5th Cir. 1992); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("A reversal and remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions."); *Fuller v. Comm'r of Soc. Sec. Admin.*, 2025 WL 747880, at *9 (W.D. Tex. Feb. 18, 2025) ("Courts in the Fifth Circuit have found that a party's substantial rights are affected when the ALJ makes a factual error and relies on that error in crafting Plaintiff's RFC."); *Moreno v. Berryhill*, 2018 WL 4658503, at *8 (S.D. Tex. Sept. 6, 2018) ("Because the ALJ made an erroneous finding of fact that he then used as a central component of his evidentiary analysis, the court cannot conclude that the ALJ's decision is based on substantial evidence.").

Here, the ALJ relied on the factual errors. When concluding that Plaintiff's subjective complaints did not justify further restrictions in her RFC, the ALJ specifically noted Plaintiff's normal range of motion in her lumbar spine as a reason for this decision. ([10] at 29).

Additionally, the ALJ would go on to rely on the factual mistakes to decide how much weight to give the medical opinions of record. Plaintiff's treating physician, Dr. Phillip Blount, and treating Nurse Practitioner Shara Beckwith, provided medical source statements indicating that Plaintiff had limitations greater than those assigned by the ALJ. The ALJ found these medical opinions to be unpersuasive and in doing so specifically stated that Plaintiff has a normal range of motion in her lumbar spine. ([10] at 31-32).

The records show the ALJ's significant reliance on the factual mistakes, and it is certainly conceivable that the correct information could have impacted the ALJ's decision. Although the ALJ found that Plaintiff could not perform a full range of light work, the ALJ found that Plaintiff could occasionally balance, stoop, knelt, crouch, crawl, and climb ramps and stairs. ([10] at 23). Additionally, because the ALJ found that Plaintiff could perform most of the requirements of light work, the ALJ found that Plaintiff could, among other things, lift twenty pounds at a time and frequently lift and carry ten pounds. Medical findings that Plaintiff did not have normal range of motion in her lumbar spine but instead had a restricted range of motion, along with pain exacerbation in all plains and tenderness to palpation, could affect the ALJ's decision concerning Plaintiff's RFC and thus the disability determination.

In sum, the ALJ's RFC determination was based in significant part on factual mistakes concerning the medical evidence. The ALJ's error was not harmless because it is not inconceivable that she would have reached a different decision had she considered the correct

15

information.  Accordingly, the ALJ's determination is not supported by substantial evidence, and remand is required.[10]

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that:

1. The Commissioner's final decision be reversed, and

2. This action be remanded to the Commissioner for further administrative proceedings in accordance with this report and recommendation.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 28th day of April, 2026.

s/ Michael T. Parker
United States Magistrate Judge

---

[10] While Plaintiff presents other arguments why the ALJ's decision is not supported by substantial evidence, the finding that the ALJ relied significantly on a serious factual mistake pretermits consideration of Plaintiff's other arguments.

16